**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **TOBY KATZ**<br>**Plaintiff,**<br><br>**v.**<br><br>**IRON HILL COMPANY, et al.,**<br>**Defendants.** | **CIVIL ACTION NO. 22-cv-1012** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CONTEMPT AND SANCTIONS AGAINST DEFENDANTS FOR VIOLATING THE COURT'S JULY 20, 2022 ORDER**

On July 20, 2022, Defendants The Louderback Group, LLC, Joseph Grasso, Donna Ohara Grasso, Joseph Grasso, Jr., Melissa Ann Russo, Michael Grasso, and Bruce Kaplan (collectively "Defendants") set a new speed record for the shortest amount of time needed to violate a Court order. Prior to approving the parties' Stipulated Order (D.E. 40), the entire Order was read into the record in open court, including the provision that specifically enjoined the Defendants "from making any payment to, or for the benefit of, any of the individual Defendants." Before accepting the Order, the Court *voir dired* each individual Defendant about the Order, and each Defendant represented to the Court that they understood and would obey the Order. Immediately after leaving the Courthouse, however, the Defendants walked over to the LaScala's Fire restaurant at the corner of 7th and Chestnut Streets, ordered a $568.54 lunch and one of the individual Defendants pulled out a Louderback debit card to pay for the lunch. Moreover, rather than admit their violation of the Court's Order, the Defendants falsely classified this expense as "Construction Materials" on the August 17, 2022 report of Louderback's July 2022 expenses sent to the Plaintiff pursuant to paragraph 6.e of the Order. This false classification of the expense constitutes a second violation of the Court's Order.

The Defendants' contempt of this Court's Order as set forth above is beyond words. But this conduct is not the Defendants' only violation of the Court's Order. Accordingly, Plaintiff Toby Katz seeks appropriate sanctions against the Defendants, including the payment of the misappropriated funds into the Court and payment of Plaintiff's attorney fees.

**FACTS**

On July 6, 2022, the Court held an evidentiary hearing on Plaintiff's Motion for a Preliminary Hearing. Defendant Bruce Kaplan ("Kaplan"), the Chief Financial Officer of Defendants Iron Hill Company ("Iron Hill") and The Louderback Group, LLC ("Louderback) testified. Kaplan testified extensively about Joseph Grasso's ("Mr. Grasso") use of the Iron Hill and Louderback debit card for personal expenses. *See, e.g.*, Hearing Tr. p. 122:9-123:15. Kaplan admitted that Mr. Grasso used the companies' debit cards for various personal meals, including family dinners. *See*, *e.g.*, *id.* at pp. 104:3-18, 135:5-11, 151:20-152:5. When repeatedly challenged about Mr. Grasso's various personal charges which had been classified as business expenses, Kaplan testified that they "would have been an error on my part." *See*, *e.g*., id. at p. 98:16-21.

The Court scheduled the continuation of the evidentiary hearing for July 20, 2022. That morning the Defendants wanted to settle Plaintiff's Motion and consented to the Plaintiff's request for relief. After approximately two hours of negotiation, the parties reached a written Stipulated Order (D.E. 40). In open court, Mr. Grasso's counsel read the entire Stipulated Order into the record. Among the terms of the Stipulated Order are the following:

> 1. ***Defendants Joseph Grasso and Donna Grasso are*** **ENJOINED** from using any assets of Iron Hill Company and The Louderback Group, LLC, including, but not limited to, the debit and credit cards of either company, or ***from incurring any charge*** (including, but not limited to, charges on PayPal, Venmo or Amazon), ***to be deducted from or paid by Iron Hill Company or The Louderback Group, LLC***.

* * *

> 6. Defendants Iron Hill Company and ***The Louderback Group, LLC*** are **ENJOINED** from ***making any payments*** to, or ***for the benefit of, any of the individual Defendants*** (Joseph Grasso, Donna Ohara Grasso, Joseph Grasso, Jr., Melissa Ann Russo, Michael Grasso, Amanda Grasso, Nicholas Grasso, Bruce Kaplan, and Andres Papadopoulus), with the only exceptions being that The Louderback Group, LLC may continue to:
>
> * * *
>
> e. reimburse Joseph Grasso, Jr., Nicholas Grasso, Joseph Grasso, Sr. and Bruce Kaplan for legitimate and verified expenses incurred in the ordinary course of business. ***Such expenses must be supported by receipts and provided to Bruce Kaplan who will monthly provide a report to all counsel on such reimbursements.***

D.E. 40 (italics and bold emphasis added; just bold emphasis in the original).

On July 20, 2022, Defendants Joseph Grasso, Donna Ohara Grasso, Joseph Grasso, Jr., Melissa Ann Russo, Michael Grasso, and Bruce Kaplan were each present in the Courtroom.[1] Before accepting the Stipulated Order, the Court *voir dired* each individual Defendant in the Courtroom. The Court asked the Defendants, *inter alia*, whether they had enough time to discuss the Stipulated Order with their counsel, whether they understood the Stipulated Order, and whether they agreed to the Stipulated Order. Each Defendant answered the Court in the affirmative to each question. The Court had a lengthy *voir dire* of Kaplan concerning whether the Stipulated Order would be followed. Only after each of the Defendants affirmed their consent did the Court agree to the Stipulated Order.

On August 17, 2022, Louderback sent an email to Plaintiff with a report concerning Louderback's July 2022 expense pursuant to paragraph 6.e of the Stipulated Order. **Ex. A**. Louderback's email included an explanatory Note 1 that "Two debit charges by Joseph Grasso,

[1] Defendants Amanda Grasso and Nicholas Grasso were not present in the Courtroom. Plaintiff does not seek to personally sanction them for the conduct raised in this Motion.

Sr. on the #3992 card were processed by the bank as of July 21st." *Id*. The email attached a "Report for all debits, for both debit card charges, wire transfers and checks with explanations from July 21st to July 31st." That Report was a spreadsheet entitled "All ACCOUNT DEBITS OF 7 21 22 TO 07 31 22." Louderback highlighted in red the two charges referenced in Note 1 and described as "FCP Euro" for "Car Parts." **Ex. B**. Plaintiff does *not* assert that these charges violated the Court's Order.

However, other charges on the August 17, 2022 report do violate the Court's Order.

In violation of the Court's Order, the Defendants charged their July 20, 2022 post-hearing family lunch to Louderback. Buried in the spreadsheet is a July 21, 2022 debt from Louderback's checking account with the following description: "LASALAS FIRE CHESPHILADELPHIA PA 4297." Ex. B (charge at issued highlighted). The amount of the debit was $567.54. *Id*. Louderback identified the purpose of this charge as "Construction Materials." *Id*. "LASALAS FIRE" is not fire equipment for a jobsite, but a "LaScala's Fire," restaurant located on the corner of 7th and Chestnut Street in Philadelphia, less than two blocks from the Courthouse. *See* **Ex. E** (page from lascalasfire.com). On information and belief, this charge processed on July 21, 2022, actually occurred on July 20, 2022, immediately following the hearing. Thus, like the FCP Euro charge discussed above, the LaScala charge hit Louderback's bank account the day after the transaction. During the July 6, 2022 lunch break, Plaintiff's counsel personally observed the Grasso family at LaScala.[2] Louderback's bank statement reflects this July 6, 2022 meal in the amount of $420.57 as a July 7, 2022 transaction (i.e. the day after the hearing). **Ex. C**, p. 4. Since the July 20, 2022 LaScalla charge was directly debited from Louderback's account, it could only

[2] Plaintiff's counsel was looking for a place to eat lunch and upon noticing the Grasso family in LaScalla, continued on to the Wawa at 6th and Chestnut Street.

have been initiated by one of three Defendants with access of a Louderback debit card (Mr. Grasso, his son or Kaplan). Consequently, immediately after advising the Court that they would stop using Louderback's accounts to make payments for the Defendants, one of these Defendant went into their wallet and pulled out a Louderback debit card to charge the family's meal. Thus, despite the Stipulated Order, this charge was just business as usual for the Grasso family – have the business pay for every family meal. This conduct standing alone is sufficient to warrant a contempt finding.

But the Defendants' bad behavior continued. On August 17, 2022, the Defendants covered up the improper LaScala payment by stating the "Purpose" of the transaction was for "Construction Materials." Ex. B. Given the scant information provided (no back up receipts were provided), it would have been easy to miss this transaction. Thus, once again, Plaintiff was forced to discover the Defendants' improper use of Louderback funds by careful forensic detective work, rather than being able to rely on the Defendants to truthfully report their transactions pursuant to the Stipulated Order.

While Louderback's report only covers eleven days, there appears to be another violation of the Court's Order: a PayPal charge on July 25, 2022 for "PEACOCKTV" in the amount of $5.29. Ex. B (charge at issue highlighted). The purpose of this charge is identified as "Office TV Subscription." *Id*. Peacock TV is NBCUniversal's streaming service. The idea that Louderback, rather than Mr. Grasso personally, has a Peacock subscription is laughable. The conclusion that this expense is really a business expense, rather than a personal expense, is also belied by Louderback's August 19, 2022 accounting for Mr. Grasso personal expenses from March 2021 through July 2022. **Ex. D.** Lines 2513 through 2524 of that accounting show monthly $5.29 charges for Peacock from July 2021 through June 2022. *Id*., p. 53 (highlighting added). Louderback admitted that each of these Peacock charges were Mr. Grasso's "Personal Charges."

*Id*. Thus, the change in classification of the Peacock charge from a personal charge to a "Office TV Subscription" charge only came after the Court's Order. While the Peacock charge itself is not large in a monetary sense, the Defendants' failure (1) to provide accurate descriptions of why charges are being made, and (2) to strictly follow the Court's Order, is very disturbing. This bad conduct is made worse when the Defendants produce reports that change descriptions of transactions to make them appear to be property, when actually the Court's Order is being violated. This conduct should not be tolerated.

Plaintiff has expended considerable time preparing the instant Motion, which time can be detailed at any Court hearing. However, at Plaintiff's counsel usual hourly rate, the time value of preparing the instant motion was $5,955 (David Dormont: 9.4 hours at $525/hour; Joseph McCool: 1.6 hours at $490/hour; Lathrop Nelson: .4 hours at $590/hour).

**Legal Standard for Finding Defendants in Contempt**

The Court has clear legal authority to sanction the Defendants. "There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966). To hold a defendant in civil contempt, a court "must find that (1) a valid court order existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order." *John T. v. Del. Cty. Intermediate Unit*, 318 F.3d 545, 552 (3d Cir. 2003).

"'Willfulness is not a necessary element of civil contempt,' accordingly, 'evidence regarding good faith does not bar the conclusion. that the defendant acted in contempt.'" *John T.*, 318 F.3d at 552 (quoting *Harley-Davidson, Inc. v. Morris*, 19 F.3d 142, 148-49 (3d Cir. 1994)). Thus, "good faith is not a defense to civil contempt." *Robin Woods Inc. v. Woods*, 28 F.3d 396,

399 (3d Cir. 1994). Accordingly, the Defendants' failure to comply with this Court's Order – not their state of mind – makes civil contempt appropriate.

Finally, the Court is "afforded broad discretion to fashion a sanction that will achieve full remedial relief." *John T.*, 318 F.3d at 554. "Sanctions for civil contempt serve two purposes: 'to coerce the defendant into compliance with the court's order and to compensate for losses sustained by the disobedience.'" *Robin Woods*, 28 F.3d at 400 (quoting *McDonald's Corp. v. Victory Investments*, 727 F.2d 82, 87 (3d Cir. 1984)). Thus, a compensatory award "seeks to ensure that the that the innocent party received the benefit of the injunction." *Id*. The standard of review of "a district court sanction for civil contempt is whether the district court abused its wide discretion in fashioning a remedy." *Id.* at 399.

Consequently, for the reasons set forth above, Plaintiff respectfully requests that this Court grant the Motion and enter the proposed order (a) finding the Defendants in contempt of Court, (b) ordering the individual defendants to personally pay $573.83 into the Court, (c) ordering the Defendants to pay Plaintiff's attorney fees, and, (d) granting such other relief as the Court deems appropriate under the circumstances.

Dated: September 6, 2022

Respectfully submitted,

**MONTGOMERY MCCRACKEN WALKER & RHOADS LLP**

By: *s/ David Dormont*

David Dormont (PA ID. No. 66252)
1735 Market Street, 19th Floor
Philadelphia, PA 19103
(215) 772-1500
Email: ddormont@mmwr.com

*Attorneys for Plaintiff Toby Katz*