# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TOBY KATZ

                  **Plaintiff,**

      v.

IRON HILL COMPANY, *et al.*

                  **Defendants.**

**CIVIL ACTION NO. 22-1012**

## MEMORANDUM OPINION

**Rufe, J.**                                                                      **March 7, 2023**

Plaintiff Toby Katz brings this action against Defendants Iron Hill Company; Louderback Group, LLC; Joseph Grasso and his wife Donna Ohara Grasso; their children, Joseph Grasso, Jr., Melissa Ann Grasso, Michael Grasso, Amanda Grasso, and Nicholas Grasso; their son-in-law, Andres Papadopoulus; and Iron Hill and Louderback's Chief Financial Officer, Bruce Kaplan. Katz seeks a declaratory judgment that Iron Hill and Louderback constitute Joseph's alter egos.[1] She also asserts claims of fraudulent transfer, aiding and abetting, and civil conspiracy. Joseph and Donna move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that certain of Plaintiff's claims are time-barred. To the extent that the Complaint is not dismissed, Joseph and Donna move to strike allegedly scandalous and impertinent allegations set forth in the Complaint. For the reasons discussed below, the motion is granted in part and denied in part.

---

[1] The parties who share the last name Grasso are referred to by their first names for clarity.

I.    **BACKGROUND**[2]

This lawsuit stems from Katz's attempts to execute a prior judgment against Joseph. In November 2016, Katz's since-deceased spouse, Marshall Katz, obtained a judgment of more than $23 million against Joseph in Illinois state court (the "Illinois Judgment"). That action was transferred to Montgomery County, Pennsylvania in February 2017 and remains pending (the "Montgomery County Action").[3] To escape the Illinois Judgment and the claims of other creditors, Joseph filed for bankruptcy in the Eastern District of Pennsylvania in 2012.[4] Katz avers that "Joseph has been and remains insolvent at all material times, both prior to and after his bankruptcy and until today."[5]

Katz cites decisions of the Bankruptcy Court showing that the bankruptcy was marred by substantial deception and fraud on the part of Joseph and Donna. On motion from one of Joseph's other creditors, the Bankruptcy Court converted the bankruptcy into a Chapter 7 proceeding and appointed a Trustee to oversee Joseph's bankruptcy estate due to various misconduct engaged in by Joseph.[6] The Trustee then commenced three separate adversary proceedings against Joseph and Donna, successfully securing a judgment in each action.[7] In 2015, the Bankruptcy Court denied Joseph a discharge from bankruptcy, finding that Joseph repeatedly lied to the court and creditors, wrongfully concealed assets, and had conducted "an

---

[2] The factual allegations in Katz's Complaint [Doc. No. 1] are assumed true for purposes of evaluating the Motion to Dismiss.

[3] *Katz v. Grasso*, No. 2017-02140 (Montgomery Cnty. Ct. Com. Pl.).

[4] Compl. [Doc. No. 1] ¶ 33; *In re Grasso*, No. 12–11063 (Bankr. E.D. Pa.).

[5] Compl. [Doc. No. 1] ¶ 34.

[6] Compl. [Doc. No. 1] ¶¶ 38-43; *In re Grasso*, 490 B.R. 500 (Bankr. E.D. Pa. 2013).

[7] Compl. [Doc. No. 1] ¶¶ 46-54.

intentional scheme to obscure this Court and his creditors the nature of his finances."[8] Joseph's bankruptcy case was eventually closed on September 24, 2020.[9]

Following the closure of Joseph's bankruptcy case, Katz began to seek discovery in aid of execution on the Illinois Judgment.[10] Katz alleges that Joseph caused the creation of companies Iron Hill and Louderback "to serve as his alter ego and conceal and attempt to shield his assets from his creditors."[11] She further alleges that "Iron Hill, Louderback, Melissa, Joe Jr., Michael, Amanda, Nicholas and Kaplan agreed to act as a conduit for Joseph's assets for purposes of hindering, delaying and defrauding Joseph's creditors."[12]

Iron Hill was founded by Joseph in 2015.[13] Joseph listed the company in his daughter's name, but Katz argues that Joseph had "actual and complete control over Iron Hill" and acted as the President, Secretary, and Treasurer.[14] Katz also claims that Joseph did not draw a salary from Iron Hill in order to avoid creditors.[15] After Joseph exited bankruptcy, Katz alleges that he created Louderback as an additional means to conceal his assets.[16] Katz claims that while Joseph's children are the nominal owners of Louderback, Joseph "manages and retained complete control of Louderback and operate [sic] it for his sole benefit."[17] After receiving a Writ

---

[8] *In re Grasso*, 537 B.R. 216, 219 (Bankr. E.D. Pa. 2015), *aff'd*, 562 B.R. 877 (E.D. Pa. 2016) (quoting *In re Grasso*, 490 B.R. 500, 506 (Bankr. E.D. Pa. 2013)).

[9] Compl. [Doc. No. 1] ¶ 71.

[10] Compl. [Doc. No. 1] ¶ 30.

[11] Compl. [Doc. No. 1] ¶ 72.

[12] Compl. [Doc. No. 1] ¶ 77.

[13] Compl. [Doc. No. 1] ¶ 78.

[14] Compl. [Doc. No. 1] ¶¶ 78-82, 86.

[15] Compl. [Doc. No. 1] ¶ 103.

[16] Compl. [Doc. No. 1] ¶ 87.

[17] Compl. [Doc. No. 1] ¶¶ 92-93.

3

of Execution from the Montgomery County Sheriff in March 2021 seeking to foreclose against any assets of Joseph, Louderback recategorized Joseph as an employee and began paying him a salary.[18]

Katz asserts that Iron Hill and Louderback "are essentially Joseph's piggy bank to use as he sees fit."[19] The Complaint alleges a variety of ways in which Joseph uses funds from Iron Hill and Louderback in his personal life, ranging from using company credit cards for personal charges, to using the companies' funds to purchase and improve his properties.[20] Katz also alleges that Joseph has fraudulently transferred assets to Donna, Melissa, and Iron Hill since 2014, and that he uses Donna, Melissa, Iron Hill, and Louderback's bank accounts to fund his own personal spending and to conceal assets from creditors.[21]

On March 17, 2022, Katz filed this lawsuit against Joseph, members of his family, Iron Hill, Louderback, and Kaplan.[22] Katz seeks a declaratory judgment that Iron Hill and Louderback constitute Joseph's alter ego. She also brings claims of fraudulent transfer against all defendants under the Pennsylvania Uniform Voidable Transactions Act ("PUVTA"),[23] as well as claims of aiding and abetting and civil conspiracy against all defendants except Papadopoulus.

---

[18] Compl. [Doc. No. 1] ¶¶ 141, 144.

[19] Compl. [Doc. No. 1] ¶ 107.

[20] *See generally* Compl. [Doc. No. 1] ¶¶ 107-40.

[21] Compl. [Doc. No. 1] ¶¶ 191-93. Specifically, Katz alleges that Joseph concealed assets held in a Vanguard account, which he transferred to his wife Donna; used Donna and Melissa's accounts to conceal rental income; and used the Vanguard funds to improve one of his properties. *Id.* at ¶¶ 194-202, 203-37, 238-46.

[22] Katz also moved for a Temporary Restraining Order and Preliminary Injunction when she initiated this action. *See* Mot. TRO and Prelim. Inj. [Doc. No. 2]. The Court denied Katz's Motion for a Temporary Restraining Order without prejudice and held a hearing on the Motion for a Preliminary Injunction. *See* Order of Apr. 13, 2022 [Doc. No. 10]; Order of July 7, 2022 [Doc. No. 31]. The Court dismissed Katz's Motion for a Preliminary Injunction as moot based on the stipulated order of the parties. *See* Order of July 20, 2022 [Doc. No. 40].

[23] 12 Pa.C.S.A. §§ 5101 *et seq.*

## II.    LEGAL STANDARDS

For a claim to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), each claim of a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face.[24] The question is not whether the plaintiff will ultimately prevail, but whether the complaint is "sufficient to cross the federal court's threshold."[25] The court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to the relief."[26] However, the court "need not credit a complaint's 'bald assertions' or 'legal conclusions.'"[27]

Under Federal Rule of Civil Procedure 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[28] "The standard for striking a complaint or a portion of it is strict, and 'only allegations that are so unrelated to the plaintiffs' claims as to be unworthy of any consideration should be stricken.'"[29] The purpose of a motion to strike is "to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters."[30] While "[a] court possesses considerable discretion in disposing of a motion to strike under Rule 12(f)," such motions are "not favored

---

[24] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

[25] *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (same).

[26] *Philips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3rd Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3rd Cir. 2002)).

[27] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3rd Cir. 1997) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996)).

[28] Fed. R. Civ. P. 12(f).

[29]  *Steak Umm Co., LLC v. Steak'Em Up, Inc.*, No. 09-2857, 2009 WL 3540786, at *2 (E.D. Pa. Oct. 29, 2009) (quoting *Johnson v. Anhorn*, 334 F. Supp.2d 802, 809 (E.D. Pa. 2004)).

[30] *Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 615 (E.D. Pa. 2015) (citation omitted).

and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case."[31]

## III. DISCUSSION

### A. Motion to Dismiss

Joseph and Donna argue that certain of Katz's claims are time-barred under the PUVTA, which provides under Section 5109 that:

> A claim for relief with respect to a transfer or obligation under this chapter is extinguished unless action is brought:
>
> > (1) under section 5104(a)(1) (relating to transfer or obligation voidable as to present or future creditor), not later than four years after the transfer was made or the obligation was incurred or, if later, not later than one year after the transfer or obligation was or could reasonably have been discovered by the claimant; or
> >
> > (2) under section 5104(a)(2) or 5105(a) (relating to transfer or obligation voidable as to present creditor), not later than four years after the transfer was made or the obligation was incurred.[32]

Katz seeks to void transactions under Sections 5104(a) and 5105(a) of the PUVTA dating back to January 2017.[33] Joseph and Donna argue that because Katz initiated this action on March 17, 2022, she cannot bring claims under Sections 5104(a)(2) and 5105(a) to void transactions that occurred before March 17, 2018. With respect to Katz's claims brought under Section 5104(a)(1), Joseph and Donna argue that Katz did not exercise due diligence to discover

---

[31] *Ford-Greene v. NHS, Inc.*, 106 F. Supp. 3d 590, 615 (E.D. Pa. 2015) (quoting *River Road Dev. Corp. v. Carlson Corp.*, No. 89-7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990)).

[32] 12 Pa.C.S.A. § 5109.

[33] Compl. [Doc. No. 1] ¶¶ 279-95.

6

Joseph's assets, despite initiating a lawsuit against Joseph in 2007[34] and being an active

participant in Joseph's bankruptcy proceedings. Therefore, they assert that Katz also cannot use

Section 5104(a)(1) to void transactions that occurred before March 17, 2018.

In response, Katz argues that (1) each cause of action in the Complaint asserts

wrongdoing within the past four years, and thus no basis exists to dismiss entire causes of action;

(2) while the Complaint does allege that certain wrongful transactions occurred before March 17,

2018, the discovery rule and the doctrine of fraudulent concealment[35] would toll the limitations

period for such transactions; and (3) alternatively, to the extent that any specific transaction is

outside the limitations period, the Court cannot make that determination without fact discovery.

As a threshold issue, Section 5109 of the PUVTA imposes a statute of *repose* and not a

statute of *limitations*.[36] This is an important distinction. As the Supreme Court of Pennsylvania

explained:

> A statute of repose . . . limits the time within which an action may be brought and
> is not related to the accrual of any cause of action; the injury need not have
> occurred, much less have been discovered. Unlike an ordinary statute of limitations
> which begins running upon accrual of the claim, the period contained in a statute
> of repose begins when a specific event occurs, regardless of whether a cause of
> action has accrued or whether any injury has resulted . . . . While a statute of

---

[34] *See Katz v. Grasso, et al.*, No. 07-24116 (Cir. Ct. Cook Cnty., Ill., Ch. Div.).

[35] Under the discovery rule, those "who are reasonably unaware of an injury that is not immediately ascertainable have essentially the same rights as those who suffer an immediately ascertainable injury." *Fine v. Checcio*, 870 A.2d 850, 860 (Pa. 2005). Under the fraudulent concealment doctrine, the statute of limitations is tolled where "through fraud or concealment the defendant causes the plaintiff to relax his vigilance or deviate from the right of inquiry." *Bohus v. Beloff*, 950 F.2d 919, 925 (3d Cir. 1991) (citation omitted). Katz alleges that the Defendants intentionally hid, lied, and obstructed courts and creditors from discovering Joseph's valuable assets and fraudulent transfers since 2012.

[36] *Impala Platinum Holdings Ltd. v. A-1 Specialized Services and Supplies, Inc.*, No. 16-1343, 2016 WL 8256412, at *12 (E.D. Pa. Sept. 16, 2016) (citing *In re Jamuna Real Estate, LLC*, 365 B.R. 540, 567 (Bankr. E.D. Pa. 2007)) (holding that Section 5109 imposes a statute of repose and not a statute of limitations). *Impala Platinum Holdings Ltd.* concerned the predecessor of the PUVTA, the Pennsylvania Uniform Fraudulent Transfers Act ("PUFTA"). However, for purposes of the statute of limitations versus repose analysis, Sections 5109 of the PUVTA and PUFTA are substantially the same.

limitations merely bars a party's right to a remedy, a statute of repose completely abolishes and eliminates a party's cause of action.[37]

Further, "[m]erely because section 5109 provides its own discovery rule" under Section 5104(a)(1) "does not militate against finding that the section is a statute of repose."[38]

It appears from the Complaint that Katz relies on Sections 5104(a)(1), 5104(a)(2), and 5105(a), but she does not specify which sections of the PUVTA should be applied to certain transactions. Katz cannot rely on Sections 5104(a)(2) and 5105(a) to void transactions that occurred before March 17, 2018. The Court rejects Katz's argument that the discovery rule and doctrine of fraudulent concealment would toll those claims. As stated above, Section 5109 imposes a statute of repose, which "completely abolishes and eliminates a party's cause of action."[39] "Critically, tolling doctrines are inapplicable to statutes of repose unless such doctrines are explicitly incorporated into the given statute."[40] Here, "there is no discovery exception cited in section 5109(2)" for Sections 5104(a)(2) or 5105(a), and the provision "expressly provides for extinguishment of an action when the transfer was made, not when it was discovered."[41]

However, as set forth above, there is explicit tolling language for Section 5104(a)(1), allowing claims to be brought one year after the transfer or obligation was or could reasonably

---

[37] *Gilbert v. Synagro Cent., LLC*, 131 A.3d 1, 15 (Pa. 2015); *see also McConnaughey v. Building Components, Inc.,* 637 A.2d 1331, 1332 n.1 (Pa. 1994) ("Statutes of repose differ from statutes of limitation in that statutes of repose potentially bar a plaintiff's suit before the cause of action arises, whereas statutes of limitation limit the time in which a plaintiff may bring suit after the cause of action accrues.").

[38] *Impala*, 2016 WL 8256412, at *12 (citing *Westinghouse Elec. Corp./CBS v. Workers' Comp. App. Bd.*, 883 A.2d 579, 588 n.11 (Pa. 2005)).

[39] *Gilbert*, 131 A.3d at 15 (citation omitted).

[40] *Star v. Rosenthal*, 884 F. Supp. 2d 319, 325 (E.D. Pa. 2012) (citations omitted).

[41] *State Farm Mut. Auto. Ins. Co. v. Cordua, et al.*, 834 F. Supp. 2d 301, 305 (E.D. Pa. 2011).

8

have been discovered by the claimant. Therefore, for claims asserted under Section 5104(a)(1), the operative question is when Katz knew of, or could have reasonably discovered, transactions that occurred before March 17, 2018. "The applicable limitations period accordingly starts to run when the plaintiff discovers 'the alleged fraudulent nature of the transfer at issue'" and not when the plaintiff learned of the transfer itself.[42]

Joseph and Donna raise factual questions as to when Katz could have discovered certain transactions and whether she exercised due diligence. Katz asserts in the Complaint that "[t]o the extent any particular transfer at issue occurred more than four years prior to this action, then in light of the Defendants' deliberate actions as detailed above, such transfer was not and could not have reasonably been discovered more than a year before the commencement of this action."[43] However, "[t]he point in time at which a plaintiff knew or should have known about an injury is 'generally an issue of fact to be determined by the jury'" and "a court should only determine whether the discovery rule applies as a matter of law 'where the facts are so clear that reasonable minds cannot differ.'"[44] The Court cannot determine at this time whether Katz can rely on Section 5104(a)(1) to void transactions before March 17, 2018, as the record has not been fully developed.

Accordingly, Joseph and Donna's motion to dismiss is granted in part and denied in part. The Complaint is dismissed only to the extent that Katz seeks recovery under Sections

---

[42] *Santander Bank, N.A. v. Branch Banking & Tr. Co.*, No. 17-1669, 2020 WL 42724, at *5 (M.D. Pa. Jan. 3, 2020) (citation omitted).

[43] Compl. [Doc. No. 1] ¶ 266.

[44] *Santander Bank, N.A.*, 2020 WL 42724, at *6 (quoting *Knopick v. Connelly*, 639 F.3d 600, 611 (3d Cir.)).

5104(a)(2) and 5105(a) of the PUVTA to void or set aside transactions that occurred before March 17, 2018.

### B. Motion to Strike

Joseph and Donna next argue that Katz "makes sweeping, defamatory allegations that [Defendants] have engaged in a scandalous conspiracy to conceal and shield Joseph Grasso's assets from collection."[45] Joseph and Donna enumerate certain paragraphs of the Complaint that "manipulate and mischaracterize the facts," but note that "scandalous content pervades the *entire* pleading."[46] They ask the Court to strike any "scandalous and impertinent allegations" in the Complaint and direct Katz to file an Amended Complaint without any "improper allegations."[47] In response, Katz maintains that the challenged paragraphs are relevant and material to her causes of action and provide necessary factual background and context for her fraud claims under Federal Rule of Civil Procedure 9(b).[48]

Courts generally disfavor motions to strike, viewing them as a "drastic remedy . . . often sought by the movant simply as a dilatory or harassing tactic."[49] The examples identified in Joseph and Donna's motion include what they allege to be mischaracterizations of Joseph's bankruptcy proceedings and Joseph's motivations for forming Louderback, alleged deficiencies in Joseph's tax filings, and reference to an explosion at one of Joseph's properties. These

---

[45] Def.'s Br. Supp. Mot. Dismiss [Doc. No. 17-1] at 7.

[46] *Id.* at 12 (emphasis added).

[47] *Id.*

[48] Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

[49] *Zarichny*, 80 F.Supp.3d at 615 (internal quotation marks and citation omitted).

allegations are not "so unrelated" to Katz's claims that they should be stricken.[50] Rather, they relate to Katz's overarching claims that Joseph concealed his assets from creditors and used Iron Hill and Louderback's funds for personal use, including improvements to one of his properties. To the extent that Joseph and Donna dispute Katz's characterization of certain events, those issues cannot be resolved until after the record has been developed. Accordingly, Joseph and Donna's Motion to Strike Scandalous and Impertinent Allegations is denied.

## IV.   CONCLUSION

For the reasons set forth above, Joseph and Donna's Motion to Dismiss Plaintiff's Complaint and to Strike Scandalous and Impertinent Allegations is granted in part and denied in part. Katz's claims under Sections 5104(a)(2) and 5105(a) of the PUVTA to void or set aside transactions that occurred before March 17, 2018 are dismissed with prejudice, and Joseph and Donna's Motion to Dismiss the Complaint and to Strike Scandalous and Impertinent Allegations is denied in all other respects. An order will be entered.

---

[50] *See Steak Umm Co.*, 2009 WL 3540786, at *2.